United States District Court

Western District of New York

---

United States of America, Plaintiff

-Vs- **24-CR-6032 BSK**

Akram Marseet, Defendant

---

**Defendant's Motion to Impeach Witnesses**

Pro Se innocent Defendant, Akram Marseet, is filing this motion pursuant to Rules 607 and 608 of the Federal Rules of Evidence to impeach Government witnesses Drew Fowler and Chad Eaton from testifying against the innocent Defendant Akram Marseet except for their corss examination and to impeach any statements by these two dishonest witnesses against Mr. Marseet because these two witnesses committed crimes of perjury and conspiracy of subornation of perjury in violations of 18 U.S.C. 1621, 18 U.S.C. 1622, and 18 U.S.C. 1623.

**I. Legal Standard About Freedom of Speech and Threat Speech**

To understand why Government's witnesses Drew Fowler and Chad Eaton committed crimes of perjury in collusion with the United States Attorney Office for the WDNY, it is important to understand the legal standard of Threat Charges and the Constituional Right for Freedom of Speech.

**A. Protected Speech**

Because the Government and the Undersigned are building their lies against Mr. Marseet based on Marseet's exercise of his Constitutional right when he described those who discriminated and

retaliated against him, described those who betrayed their Judicial morals and colluded with litigants who has power and money, it is important to teach the Undersigned the Constitutional right of freedom of speech of any person living in the US as long as his/her speech is correct and does not contain any threat to harm any person. Below are some controlling law from the US Supreme Court, the Second Circuit, and other district courts.

1. In Counterman v. Colorado, 143 S.Ct. 2106, 216 L.Ed.2d 775 (2023), the Supreme Court held that: "***The First Amendment's mantle covers speech that is "vituperative, abusive and inexact***."
2. In United States V. Turner, 720 F.3d 411 (2nd Cir, 2013), the Second Circuit held that: "***The first Amendment protects vehement, scathing, and offensive criticizm of public officials including United States Judges***."
3. In United States v. Garnes, 102 F. 4th 628 (2nd Cir. 2024), the Second Circuit ruled: "*But the First Amendment protects even intemerate speech, and words that take a threatening form may simply reflect* ***heated rhetoric*** *that, in context, would not reasonably engender fear*."
4. In United States V. Hunt, 573 F.Supp.3d 779 (E.D.N.Y. 2021), the district court Circuit held that: "*The first Amendment protects vehement, scathing, and offensive criticizm of public officials including Members of Congress,* ***"as well as political exaggeration or expressions of opinion,"*** *and even advocacy the use of force or violence*."
5. In United States v. Cook, 472 F. Supp. 3d 326 (N.D. Miss. 2020), the district court mentioned that: "*Further, the district court noted that* ***the Supreme Court has "consistently classified emotionally distressing or outrageous speech as protected,*** ... "."
6. In United States v. Schweitzer, 4:17 CR 3094 (D. Neb. Nov. 28, 017), the district held that:

*"The Government is not permitted to punish speech merely because the speech is forceful or aggressive."*

**B. Prosecutable Speech as a Matter of Law**

The following case law citations draw the line between prosecutable speech and non-prosecutable speech. In summary, prosecutable speech must constitute a "**True Threat**."

1. In United States v. Fitzgerald, Case No. 5:15-cr-55-01 (D. Vt. Dec 30, 2015), the court held that: "***all crimes arised from threats or other expressive conduct are subject to the First Amendment protections***." ... "***Threats in particular are subject to "true threat" analysis***."
2. The Tenth Circuit in United States v. Ream, No 11-4216 (10th Cir. Jan 08, 2013) held that: "***Under the First Amendment, threatening expression can be criminally punished if the communication at issue is a 'true threat'***,"
3. The Tenth Circuit in United States v. Wheeler, 776 F. 3d 736 (10th Cir. 2015) held that *Section 875(c),* ***like all threat statutes****, "must be interpretted with the commands of the First Amendment."*
4. In US. Bagdasarian, 652 F.3d 1113, 39 .... (9th Cir, 2011), the Ninth Circuit held that: "*In order to affirm a conviction* under any threat statute *that criminalizes pure speech, we must find sufficient evidence that the speech at issue constitutes a true threat as defined in Black*."
5. In U.S. v. Jongeward, 567 F.3d 336 (8th Cir. 2009), the Eight Circuit held that: "Because Sec. 875(C) criminalizes pure speech, the Government must prove that an allegedly unlawful communication contains a so-called true threat."
6. In United States v. Schweitzer, 4:17 CR 3094 (D. Neb. Nov. 28, 017), the district court held that: "*The First Amendment requires a court or a jury to differentiate between true threats*

*and protected speech*."

7. In United States v. Stock, 778 F.3d 287 (3rd. Cir. 2013), the Third Circuit heald that: "*To be sure, Watts taught us to interpret threat in light of the First Amendment.*"

**C. Definition of True Threat**

1. The Supreme Court in Virginia V. Black 538 U.S. 343 (2003) defined True threat as: "*encompass those statements* ***where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence*** *to a particular indivdual or group of indivduals*."

   The Supreme Court in other cases and other lower couts have adopted this definition.

2. In Elonis v. United States, 135 S.Ct. 2001, 192 L. Ed 1, 575 U.S. 723 (2015) , the Supreme Court emphasized that: "*To qualify as a true threat, a communication must be a serious expression of an intention to commit unlawful physical violence, not merely "political hyperbole"; "vehement, caustic, and sometimes unpleasantly sharp attack"; or vituperative, abusive, and inexact" statements*."

3. The Second Circuit in U.S. v. Kelner, 534 F.2d 1020, 34 A.L.R. Fed 767 (2nd Cir. 1976), developed a standard to classify a statement as a true threat or not True Threat and this standard known as Kelner Standard where the Second Circuit held that statement is a trure threat if it is made "***so long as the threat on its face and in the circumastances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution, the statue may properly applied***."

4. Several Circuit and district courts adopted the Kelner Standard that was developed by the

Second Cictuit. For example:

**a**) The Tenth Circuit in U.S. v. Crews, 781 F.2d 826 (10th Cir. 1986) held that:

"*Since Watts, the* ***Second Circuit*** *has stated that,* ***to avoid First Amendment protection****, the government must show that a threat according to [its] language and context* ***conveyed a gravity of purpose*** **and** ***likelihood of execution*** *so as to constitute speech beyond the pale of protected 'vehement, caustic... unpleasantly sharp attacks on government and public officials.'*"

**b**) The district court in US. Baker, 890 F. Supp. 1375 (E.D. Mich. 1995) also held:

(i) *In Kelner, the Second Circuit drew on Watts to illuminate the constitutional limits of a prosecution under Sec. 875(c)*

(ii) *It fails within Kelner's requirement of a threat that is "****so unequivocal, unconditional, immediate, and specific as to the person threatened as to convey a gravity of purpose and imminent of prospect of execution****."*

(iii) "***In order to be constitutionally sanctionable, the statements Baker made must meet Kelner's unequivocal, unconditional, immediate, and specific standard***."

**c)** The district court in United States v. Cook, 472F. Supp. 3d 326 (N.D. Miss. 2020) also adopted the standard of the Second Circuit where it stated:

"***The Second Circuit in U.S. v. Kelner, has developed a particularly detailed approach stating that a true threat is one that*** *"on its fact it is made so unequivocal, unconditional, immediate, and specific as to the person threatened. as to convey a gravity of purpose and imminent prospect of execution.*"

5. In United States v. Pettaway, 297 F.Supp.2d 137 (D.D.C. 2018), the district court held that:

*"A true threat is a serious threat as distinguished from words as mere political argument, idle talk or jest."*

6. In U.S v, Nissen, 432 F. Supp. 3d 1298 (D.N. M 2020), the district court held that:

   *"A true threat **conveys a gravity of purpose and likelihood of execution** so as to constitute speech beyond the pale of protected vehement, caustic, ..., unpleasantly sharp attacks on government and public officials."*

**D. Temporal Element of Threat**

1. In United States v. Stock, 778 F.3d 287 (3rd. Cir. 2013), the Third Circuit heald that:

   **a)** *The district Court did not err in considering whether the term threat in Sec. 875(C) includes a **temporal element**.*

   **b)** *"The District Court concluded that the word threat in Sec. 875(C) means an expression of an intention to inflict injury **at once or in the future**."*

   **c)** *"We hold that the word threat in Sec. 875(C) encompasses only communications expressing an **intent to inflict injury in the present or future**."*

   **d)** *"When Sec. 875 (C) was last amended in 1994, one definition of the term 'threat' expressly included a **temporal element**. See Black's Law Dictionary 1480 (6th ed. 1990) ("The term 'threat' means an **avowed present determination or intent to injure presently ot in the future**."*

   **e)** *"While other definition did not do so explicitly, see, e.g., id. ([A threat is a] communicated intent to inflict physical or other harm on any person or property."), they did so implicitly by defining "threat" with reference to the **speaker's intent, which is an inherently <u>prospective concept</u>** ... (defining the word intent as a state of mind in which **a person seeks to***

***accomplish a given result through a course of action***."

**f**) "***Thus, the plain meaning of the word "threat" in Sec. 875 (C) suggests that it is confined to communications expressing an intent to injure in the present or future***."

**g**) [quoting United States v. Davila, 461 F.3d 298, 302 (2d Cir. 2006)]. "... *threats* ***may include announcements of future or impeding action, but not statements regarding past events or retrospective harm***."

**i**) "*Based on our own statutory interpretation and this persuasive authority,* ***we hold that the term "threat" in Sec. 875(C) refers to the expression of an intent to inflict injury in the present or future***."

**j**) "*...* ***a statement that refers only to past conduct does not constitute a true threat***."

2. In United States v. Havelock, ... F.3d 1284, 2012 Daily Jurnal (9th Circ. 2012), the Ninth Circuit held that: "***A threat can only refer to a future, not a past act***."
3. In U.S. v. Alkhabaz, 104 F.ed 1492 (6th Cir. 1997), the Sixth Circuit held that: "*The term threat means an avowed present determination or intent to injure* ***presently or in the future***."
4. In U.S. v. Zavrel, 384 F.3d 130 (3rd Cir. 2004), the Third Circuit mentioned:

**a**) "***A threat is a serious statement or communication which expresses an intention to inflict injury at once or in the future*** *as disdiguished from idle or careless talk, exaggreration or something said in a joking manner*."

**b**) "*The meassage* [***'I have just poinsoned you'***] ***does not express the sender's intent to engage in any future conduct****. Rather, it expresses that the sender's intent to inflict bodily harm has been satisified upon receipt of the communication. This is significant because numersous courts require that,* ***in order to constitute a threat within the context of the***

***federal threat statues**, the communication must convey the message that bodily harm will be inflicted by the speaker (or a confederante) in **some future act**.*"

**c**) "*The requirement that a threat contemplate **some future conduct** by the speaker is also suggested in Black's Law dictionary, which defines the term as including a declaration of an intention to injure another or his property by some unlawful act. Black's Law Dictionary 1480-81 (6th ed. 1990)*"

5. In United States v. Landham, 251 F.3d 1072 (6th Cir. 2001), the Sixth Circuit reveres the decision of the district court and held that the *"This statement is not a communication containing a threat"* because it ***"refers to past conduct, not present or future conduct"***

**6.** In United States V. Hussaini, 19-60387-CR-ALTMAN (S.D. Fla. Jan 13, 2022), the district court held that: "*The district court [in United States v. Landham, 251 F.3d 1072 (6th Cir. 2001) ] erred in refusing to dismiss an indictment under Sec. 875 (C) where it was self evident that the communications **refered to past conduct, not present or future conduct.)"***

**E. Other Factors Regarding True Threats**

1. In United States v. Dillard, 989 F.Supp.2d 1169 (D. Kan. 2013), the district Court held that:

**a**) "*First, **a threat cannot be hypothetical** or **conditional** or **predictional**; the threat must be imminent, likely, and unconditional.*"

**b**) "*A threat is **not a true threat if it is expressly conditional in nature**.*"

**c**) "***A communication with equivocal language remains protected speech***."

**d**) "*There must be context linking the sender to the prospective violence.*"

**f**) "*Thus **communications which are predictions of violence by others are not true threats***."

2. In U.S. V. Kosma 951 F.2d 549 (3rd Cir, 1991), the Third Circuit held that: "*Specification of*

*date, time, and place are factors in determining whether statement is true threat.*"

3. In United States V. Smith, 928 F.2d 740 (6th Cir. 1991), the Sixth Circuit held that: " *In the instant case, the purely conditional nature of the letter is augmented by the fact that the letter does not specify a time, date, or place. ...* ***Verbal statement is not a true threat, in part, because no specification of time, place or date.***"

4. In United States v. Baker, 514 F. Supp. 3d 1369 (N.D. Fla 2021), the district court held that:

   **a**) "*The Supreme Court has cautioned that the expressly conditional nature of a statement must be considered in assessing whether it is a true threat, primerly when expresses contigency likely would never occur*."

   **b**) "***Furthermore, courts have considered conditional threats to be true threats when they specified the date and place that the threatened acts of violance would occur***."

   **c**) "*The Defendant's specification of these details* **[**date and the location of the threatened violence-as well as tactical instructions and noting that he would be joined by his "militant firiends**]** *convyed " a gravity of purpose and likelihood of execution*."

   d) "*Indeed, when a threat is used to intimidate or* ***dissuade*** *an individual from taking a particular action, the threat will often be contingent, with the threatener suggesting that violence will inly be used if the listener fails to comply with the htreatener's demands. Most threats are conditions, they are designed to accomplish something; the threatener hopes that they will accomplish it, so that he won't have to carry out the threats. They are threats nonetheless*."

**5.** In US. V. Sabagh Criminal action 21-261 (E.D. Pa Dec 15, 2021), the district court held that: "*In deciding whether speech constitutes a true threat, a court should consider the totality of*

*the circumstances and not just the words in isolations, whether the threat is conditional and the reaction of the listeners*."

6. In US. V. Dillard, 795 F.3d 119 (10th Cir 2015), the Tenth Circuit mentioned:

**a**) *To fall outside of the First Amendment's protections, a threat must "according to its language and context convey [] a gravity of purpose and likelihood of execution so as to constitute speech beyond the pale of protected vehement, caustic, unpleasantly sharp attacks on government and public officials*'"

**b**) "*The District Court agreed that the letter did not convey a true threat because (1) the alleged threat of a car bomb was not imminent, likely and unconditional and (2) the letter says nothing about what the Defendant will do*."

**c**) ***The Court dismissed the charge because it concluded that Defendant's letter did not contain true threat because***:

(i) *it did not suggest unconditional, imminent, and likely violence*

(ii) *it predicted violence by third parties but did not suggest Defendant would herself engage in violence against the doctor*.

7. In United States v. Cook, 472 F. Supp. 3d 326 (N.D. Miss. 2020), the district court held that: "*The district court dismissed the indictment in O'Dwyer, finding that after reviewing the statement and its context, it did not constitute a true threat* ***because it was hypotitical and conditional***."

**8.** In US. Bagdasarian, 652 F.3d 1113, 39 .... (9th Cir, 2011), the Ninth Circuit held that: "*The objective test requires that factfinders to look at the entire factual context of the statements including; the sorrounding events; the listener's reaction, and whether the words are*

*conditional."*

**9.** In U.S. V. Olson, 629 F. Supp. 889 (W.D. Mich. 1986), the district court held that:

**a**) *"[Defendant]'s ill-advised remarks were made in a bar in Houghton, Michigan **970 miles from Washington**; **no weapons were ever discovred in his possession**.*

**b**) *"In addition, his threats contained **no specification of time, place, or date**."*

**II. Lies and Perjury by the Intake Clerk Drew Fowler**

The intake clerk Drew Fowler who is the only witness in this falsified criminal case against Mr. Marseet engaged in professional misconduct including lying and then committing crime of perjury where these lies and crime of Perjury are self authenticate evidence that this witness is incredible and all of his statements must be impeached.

Below is a description of Marseet's interactions with the intake clerk before and and after his crime of perjury:

**A. Lies and Malicious Act by Witness Drew Fowler**.

The first evidence to impeach Government witness, Drew Fowler is because witness Fowler lied to Mr. Marseet and acted in bad faith to not send DKT#98 to Mr. Marseet.

Because Mr. Marseet expected that Judge Geraci will dismiss his case, Mr. Marseet started preparing to appeal before the dismissal of his case. Below is a brief description of Marseet's phone call conversations with the intake clerk.

1. Mr. Marseet called the Clerk on **12-19-2023** and requested from the intake clerk, Drew Fowler, to send him DKT#98. During this phone call conversation,

   **a**) The intake clerk lied to Mr. Marseet that there is fee Marseet needs to pay.

   **b**) The intake clerk lied to Mr. Marseet that he will send the money order form,

2. Because Mr. Marseet did not receive any mail from the court, Mr. Marseet called the Celrk again on **12-28-2023** and Mr. Marseet informed the intake clerk Drew Fowler that he did not receive any mail from the court including the money order. However,:

   **a**) The intake clerk, Drew Fowler, lied to Marseet that he sent the money order form, but nothing in the docket of the case shows that anything had been sent from the court to Mr. Marseet.

   **b**) The intake clerk Drew Fowler lied that he will resend it.

3. Because Mr. Marseet did not receive any mail from the court, Mr. Marseet called the Celrk again on **12-28-2023** where:

   **a**) Mr. Marseet asked the Intake clerk if there is any update about DKT#98.

   **b**) Mr. Marseet asked the Intake clerk if he needs to file motion to the Judge, but the intake clerk said no.

   **c**) The intake clerk, Drew Fowler asked Mr. Marseet "Do you have your own version?"

4. The intake clerk, Drew Fowler, send a document to Mr. Marseet which Mr. Marseet did not request and was not on the docket of the case (DKT#223).

From the aforementioned facts which is a straightforward evidence, there is no factual dispute that Government witness Drew Fowler is incredible, unreasonable, and unrelaible. This evidence is sufficient to impeach such incredible, unreasonable, and unreliable person.

**B. Crime of Perjury by Witness Drew Fowler**.

The intake clerk provided perjured testimony in conspiracy with Deputy US Marshal Services Chad Eaton and other Court personnel where he lied that Mr. Marseet threatened to murder him, Judge Geraci, and Judge Payson by saying "***If I ever come across any of you, you will be***

***dead ...***". See **Exhibit.1**.

1. After more than 18 months from his arrest (kidnapping) and after Mr. Marseet taught/educated the Court and the Government that this email is a Brady material, discoverable under Rules 16 and 26.2 and discoverable under Jencks Act, the Government produced the email that was sent by the intake clerk to his supervisors and containing what the Government alleged the details of the phone call conversation. This email is attached hereto as **Exhibit. 2**.

   **a**) As shown in Exhibit. 2, the intake clerk demonstrated that he is giving the "**exact language**" of Mr. Marseet during the phone call. This means that the statement the intake clerk provided in the email has to be the same statement he provided to the case agent under penalty of perjury.

   **b**) In his email to his supervisors, the intake clerk claimed that Marseet stated: "***If he came a crossed Judge Geraci, Judge Payson, or me, we would be dead***, ..."

   **c**) Comparing the statement the intake clerk wrote in the email to the statement he provided to the case agent, the two statements are not the same especially in threat analysis and as explained in Section. I:

   (i) The falsified statement "***If he came acrossed Judge Geraci, Judge Payson, or me, we would be dead***, ..." the intake clerk sent in the email before he testified to the case agent ***is not a threat at all*** because it is *conditional*, *hypothetical*, and *imaginary* **(desipte the fact that Mr. Marseet did not say this statement which is clear a statement by an Official English Native Speaker, not even by the English native speaker from the public.)**

   (ii) The perjured statement "***If I ever come across any of you, you will be dead ...***" is a

Threat.

(iii) Despite the fact that it is impossible that Mr. Marseet said "***If I ever come across any of you, you will be dead ...***" , but as a matter of law and for legal argument (in the Judicial system, it is no unusual to see trivial Judges force an innocent Defendant to provide legal argument against perjured testimony), **this perjurious statement is not a True Threat** because it is *conditional*, *vague*, *does not convey any gravity of purpose* (no request), it is impossible that Mr. Marseet can come across any of the two judges or the intake clerk, did not mention that Mr. Marseet is the one who will commit an unidentified offense and considering several factors such as Mr. Marseet has never made any threat before or after that phone call, Mr. Marseet had a second phone call within One hour and Seventeen minutes without any threat, Mr. Marseet had a third phone call after two days without any threat, and there is no any search related to the falsified crime.

2. The solid evidence that the Government fabricated the evidence (the perjured statement) is:

**a**) The Government withheld this email for more than 18 months while it had to produce it at the detention hearing.

**b**) The Government does not intend to use this evidence at trial.

**c**) The Government has not accepted the alleged statement in the email in any of its responses.

**d**) The Undersigned maliciously refused to mention the non-threat statement in the email in any of its orders denying Marseet's motions

**e**) None of the previous lawyers send to Mr. Marseet the testimony of the intake clerk which referred to the email,

**f**) The case agent did not mention in his affidavits or testimony in Colorado about this email,

**g**) The case agent did not mention in his affidavits or testimony in Colorado that Mr. Marseet had a second phone call with the same intake clerk on the same day without any threat where this information negates any intent of threat,

**h**) The case agent did not mention in his affidavits or testimony in Colorado that Mr. Marseet had a third phone call with the same intake clerk and another clerk officer after two days and inquired about the appeal without any threat,

**i**) The Government did not produce the email to the previous counsels.

**j**) The Government did not produce this email in its response DKT#56

**III. Crimes of Perjury by Government Witness Chad Eaton**

1. Government's witness, Deputy US Marshal Chad Eaton **provided perjured testimony** that Marset came to the courthouse and made disturbance while the truth is that:

   **a**) Mr. Marseet came to the courthouse on 07-07-2022 and submitted three filings, one of them is a motion to disqualify Judge Marian Payson.

   **b**) Mr. Marseet came to the courthouse before, on, and after 07-07-2022 and submitted filings.

   **c**) Mr. Marseet did not stay more than two minutes.

2. Government's witness, Deputy US Marshal Chad Eaton **provided another material perjured testimony** that Marseet was **using abusive words** towards some Clerk female employees.

   **a**) In his Brief Report nine days before his perjured testimony, Deputy Eaton reported to his supervisor that Marseet had **argumentative nature** as shown in **Exhibit. 3**.

**b**) Nine days before his perjured testimony, the intake clerk sent email to a Senior Inspector-US Marshal Service Matthew Parker where Eaton did not mention that Marseet used abusive words to the clerk. What the case agent Eaton mentioned is that "*We have delt with this subject in the past **badgering the clerks office** but this is the first actually threat that has been made*" as shown in **Exhibit. 4**.

**c**) Even though Judge Marian Payson is dishonest and unfair and has had an animus and filthy racism towards Mr. Marseet, she did not allege that Marseet used abusive words to the Clerk.

**d**) Mr. Marseet asserts that he has never used any abusive word towards any of the Clerk female employees.

**e**) Mr. Marseet was speaking with the Clerk about the judicial misconduct by Judge Payson.

**f**) There was no any misconduct by any of the Clerk officers. In fact, all of them (escept Drew Fowler) have had helped Marseet. answered his questions, guided him, etc, even after during this conspiracy with the exception that the Clerk ignored Marseet's letter to the Clerk to produce some evidence.

3. Government's witness, Deputy US Marshal Chad Eaton provided the perjured testimony by the intake clerk that Marseet made a threat statement by saying "*If I **ever come across** any of you, you **will** be death ...* "

**a**) In the email (attached hereto as Exhibit. 4) the case agent Chad Eaton sent to the Senior Inspector-US Marshal Service Matthew Parker, Chad Eaton wrote referring to Mr. Marseet: "*Basically, says if he **sees** two of our judges and **poor admin** clerk that answered the phone, they* **[*would*]** *be dead.*"

**b**) Now we have three different falsified statements.

**Conclusion**

Because Government witnesses Drew Fowler and Chad Eaton have intentionally committed crimes of perjury and conspired against Mr. Marseet, their testimonies must be impeached.

Date: 11-14-2025

Akram Marseet
Pro Se
130 S Plymouth Ave
Rochester NY, 14614

# Exhibit.1

**U.S. Department of Justice**
United States Marshals Service

# Report of Witness/Defendant Statement

INSTRUCTIONS: A report of interview of a defendant/suspect in custody should be made following the procedures in USMS Policy [redacted] *Additional Requirements for a Defendant/Suspect in Custody Interview Report.*

**Case #:** [redacted] **Date of Report:** 01/10/2024

**Reported By:** Deputy United States Marshal Chad Eaton **at** 100 State Street, Rochester, New York 14614

**Case Title:** Akram Marseet

## REPORT OF WITNESS/DEFENDANT STATEMENT

I, Drew A. Fowler- Intake Clerk for Western District of New York having been advised of the identities of the interviewing deputies/investigators, now make the following voluntary statement:

DAF I am currently speaking with Deputy United States Marshal (DUSM) Chad Eaton regarding an incident that occurred today January 10th, 2024, at my place of employment.

I am currently employed as an intake clerk for the Western District of New York Clerks Office. I have been employed since September of 2023. My job functions include processing paperwork, assisting the public that may request services, filing docketed paperwork for the court, and answering the main phone line for the Clerks office. On January 10, 2024, at approximately 1:18 in the afternoon, I received a phone call to the main office line. The individual identified himself as Akram MARSEET, with a caller id phone number displayed as 720-470-6826. MARSEET stated a pending case number of "6:2020-CV-7096" and began to discuss the details of the case. I have spoken to MARSEET several times in the past and was able to recognize his voice. When I have spoken to MARSEET in the past, I have provided him with docketed information in accordance with my departments policy.

Today, MARSEET became very agitated during the conversation due to his cases being dismissed (January 10, 2024) by Honorable Judge Frank Geraci. MARSEET made several statements regarding Judge Mariam Payson and Judge Geraci being "dirty sons of bitches" and criminals. MARSEET then made the following statement "If I ever come across any of you, you will be dead sons of bitches". MARSEET was referring to myself, Judge Payson, and Judge Geraci. Judge Payson was the initial judge that oversaw MARSEET's case which was then transferred to Judge Geraci. DAF

*I have read this statement given by me, or have had it read to me, and I have initialed each page to confirm that. I fully understand this statement, and by signing it certify that this statement is true and correct to the best of my knowledge and recollection. I understand that making false statements can be a criminal offense punishable by a fine and/or term of imprisonment.*

[signature] DAF 1/10/24
Signature - Witness/Defendant Initials Date

[signature] . DUSM 1/10/2024
Signature - DUSM/TFO Date

Rosemarie M Eby-Collom Case AdmIII [signature] 1/10/24
Witnessed By (Name and Title) Signature - Witnessed By Date

**DISTRIBUTION:** ☒ District ☒ Headquarters ☐ Other:

**THIS REPORT IS THE PROPERTY OF THE UNITED STATES MARSHALS SERVICE.
NEITHER IT NOR ITS CONTENTS MAY BE DISSEMINATED OUTSIDE THE AGENCY TO WHICH LOANED.**

Note: Completed forms containing personally identifiable information (PII) must be encrypted and include the appropriate marking (U/LES) in the SUBJECT line of the message prior to dissemination via email.

**Report of Witness/Defendant Statement** *(continued)*

After the conversation ended, I immediately sent an email to my supervisor reporting the incident as I felt intimidated that-someone had just threated ~~by~~ my well-being.

Witness/Defendant Initials    Date 1/10/24

Signature - DUSM/TFO    Date 01/10/2024

Rosemarie M. Eby-Collom CASB Adm III

Witnessed By (Name and Title)    Signature - Witnessed By    Date 1/10/24

ADD CONTINUATION PAGE

THIS REPORT IS THE PROPERTY OF THE UNITED STATES MARSHALS SERVICE.
NEITHER IT NOR ITS CONTENTS MAY BE DISSEMINATED OUTSIDE THE AGENCY TO WHICH LOANED.

Note: Completed forms containing personally identifiable information (PII) must be encrypted and include the appropriate marking (U/LES) in the SUBJECT line of the message prior to dissemination via email.

# Exhibit. 2

**Drew Fowler**

**From:** Drew Fowler
**Sent:** Wednesday, January 10, 2024 3:49 PM
**To:** [redacted]
**Cc:** [redacted]
**Subject:** RE: Threats from Akram Marseet

All,

I spoke with Mary, and she said give exact language.

Wanted to give a summary of the first phone conversation with Mr. Marseet that lasted about 8 minutes or so.

He called and I was able to recognize him from the caller ID and his voice. We've spoken in the past and nothing much came of it. Then he introduced himself and gave his case number, I pulled it up on CM/ECF. He asked if I could look at the decision and order filed and signed by Judge Geraci on 1/10/2024. As I pulled it up, he began to rant about how Judge Geraci, and Judge Payson were corrupt criminals. They were unjust and unfair for dismissing his case and weren't considering the facts of his case. He continued to repeat these statements quite a few times. A statement he repeated was that Judge Payson and Judge Geraci are "dirty sons of bitches". He also stated that our entire court was corrupt, and we are all criminals and racists. He believes he is being discriminated against by the Judges.

Throughout the call he stated that if he came a crossed Judge Geraci, Judge Payson, or me, we would be "dead sons of bitches."

The second call was less aggressive and only lasted a minute or two. He talked again about corruption and how the Judge's were dirty criminals. And how this decision and work from the Judges are diminishing the reputation of Chief Judge Wolford and of our court.

Thank you,
Drew

**Drew Fowler**
*Intake / Customer Service Clerk*
*Western District of New York*
Kenneth B. Keating Federal Building
100 State Street, Rochester, NY 14614
O: 585-613-4020 | FAX: 585-613-4035
www.nywd.uscourts.gov

[redacted]

[redacted]

# Exhibit. 3

**U.S. Department of Justice**
United States Marshals Service

## REPORT OF INVESTIGATION



| | | |
|---|---|---|
| 1. FID: [redacted]<br>CASE: [redacted] | 2. DATE OF REPORT: 01/10/2024 | 3. REPORTED<br>BY: EATON,CHAD<br>AT: [redacted] |
| 4. SUBJECT NAME: MARSEET,AKRAM A | | |
| 5. MERGED FIDs: | | |

6. TYPE OF REPORT:
[ ] REPORT OF ELECTRONIC INTERCEPTION
[ ] COLLATERAL LEAD
[ ] WITNESS INTERVIEW
[ ] ADMINISTRATIVE SUBPOENA
[ ] CS/CI REQUEST
[ ] BWC EQUIPMENT NON-ACTIVATION
[ ] BWC OPERATOR NON-ACTIVATION
[ ] OTHER
[ ] ARREST/CLOSE
[ ] INTELLIGENCE UPDATE
[ ] MEMORANDUM TO FILE
[ ] DUE DILIGENCE
[ ] INVESTIGATIVE ENDEAVOR
[x] FACTUAL PREDICATE (USM11 [redacted])
[ ] AUTHORIZED PURPOSE

| 7. HOURS WORKED: | 8. BWC FOOTAGE EXISTS: | 9. BWC FOOTAGE REVIEWED: |
|---|---|---|

On January 10th, 2024, Deputy United States Marshal (DUSM) Chad Eaton was contacted by Acting Judicial Security Inspector (JSI) Jon Serdual in regards to a direct threat that had been received. DUSM Eaton was briefed by JSI Serdula that a member of the Clerks Office for the Western District of New York has received a phone call from Akram MARSEET. JSI Serdula stated that the phone call threatened several Federal Judges and the member of the clerks office. DUSM Eaton is familiar with MARSEET due to prior dealings with his pending federal case and argumentative nature with the clerks office. DUSM Eaton responded to the clerks office and conducted an interview of Drew Fowler- intake clerk. Fowler gave the following statement;

"I am currently speaking with Deputy United States Marshal (DUSM) Chad Eaton regarding an incident that occurred today January 10th, 2024, at my place of employment.

I am currently employed as an intake clerk for the Western District of New York Clerks Office. I have been employed since September of 2023. My job functions include processing paperwork, assisting the public that may request services, filing docketed paperwork for the court, and answering the main phone line for the Clerks office. On January 10, 2024, at approximately 1:18 in the afternoon, I received a phone call to the main office line. The individual identified himself as Akram MARSEET, with a caller id phone number displayed as 720-470-6826. MARSEET stated a pending case number of "6:2020-CV-7096" and began to discuss the details of the case. I have spoken to MARSEET several times in the past and was able to recognize his voice. When I have spoken to MARSEET in the past, I have provided him with docketed information in accordance with my departments policy.

Today, MARSEET became very agitated during the conversation due to his cases being dismissed (January

| | | |
|---|---|---|
| 10. SIGNATURE (*Name and Title*)<br><br>CHAD EATON<br>Deputy U.S. Marshal | 11. DATE<br>01/10/2024 5:54 PM EST | 14. DISTRIBUTION<br>__DISTRICT<br>__HEADQUARTERS<br>__OTHER______________ |
| 12. APPROVED (*Name and Title*)<br><br>[redacted]<br>Supervisory Deputy U.S. Marshal | 13. DATE<br>01/10/2024 7:45 PM EST | |

*UNITED STATES MARSHALS SERVICE*
*THIS REPORT IS THE PROPERTY OF THE UNITED STATES MARSHALS SERVICE. NEITHER IT NOR ITS CONTENT MAY BE DISSEMINATED OUTSIDE THE AGENCY TO WHICH LOANED.*

**U.S. Department of Justice**
United States Marshals Service

**REPORT OF INVESTIGATION**



| 1. FID: [redacted]<br>CASE: [redacted] | 2. DATE OF REPORT: 01/10/2024 | 3. REPORTED<br>BY: EATON,CHAD<br>AT: [redacted] |
|---|---|---|
| 4. SUBJECT NAME: MARSEET,AKRAM A | | |
| 5. MERGED FIDs: | | |

10, 2024) by Honorable Judge Frank Geraci. MARSEET made several statements regarding Judge Mariam Payson and Judge Geraci being "dirty sons of bitches" and criminals. MARSEET then made the following statement "If I ever come across any of you, you will be dead sons of bitches". MARSEET was referring to myself, Judge Payson, and Judge Geraci. Judge Payson was the initial judge that oversaw MARSEET's case which was then transferred to Judge Geraci.

After the conversation ended, I immediately sent an email to my supervisor reporting the incident as I felt intimidated that someone had just threatened by well-being."

*End of Statement*

DUSM Eaton briefed JSI Serdula of the incident and conducted a security brief with Fowler. JSI Serdula conducted a security brief with Judges Geraci and Payson who had been notified of the incident via the clerks office. DUSM Eaton then met with Assistant United States Attorney Brett Harvey to discuss potential charges for MARSEET. DUSM Eaton has an affidavit pending approval with the U.S. Attorneys Office charging MARSEET with Title 18 USC Section 115(a)(1)(b) (threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).

Court Security Officers have also been briefed and provided with information if MARSEET should attempt to gain access to the Federal Building.

Based on the information received, DUSM Eaton has opened a full predicated investigation. The case is being opened due to the direct threats of harm to USMS protected persons and potential charges. It is believed MARSEET has moved from the Rochester area and is living in Golden, Colorado. DUSM Eaton will continue the investigation in locating MARSEET's whereabouts and/or apprehension.

Investigation Pending

***UNITED STATES MARSHALS SERVICE***
*THIS REPORT IS THE PROPERTY OF THE UNITED STATES MARSHALS SERVICE. NEITHER IT NOR ITS CONTENT MAY BE DISSEMINATED OUTSIDE THE AGENCY TO WHICH LOANED.*

# Exhibit. 4

On Jan 10, 2024, at 5:45 PM, Eaton, Chad (USMS) <[redacted]@usdoj.gov> wrote:

Hey Matt and [redacted]

I just wanted to give you a quick update on a predicate case I just opened for W/NY. The clerks office received a threat over the phone from a civil litigant, Akram Marseet. Basically says if he sees two of our judges and poor admin clerk that answered the phone, they'd be dead. We have delt with this subject in the past badgering the clerks office but this is the first actually threat that has been made. He civil pending civil case was closed today not in his favor. The case has been opened in [redacted] and I will be submitting the follow up 11 shortly.

Thank you,

Chad D. Eaton
US Marshals Service
Rochester, New York
O: [redacted]
C: